## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES W. HUDSON, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-181-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Charles W. Hudson, Jr. requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. As set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 13, 1965, and was forty-seven years old at the time of the most recent administrative hearing (Tr. 131, 1102). He has an eleventh grade education and past relevant work as an auto mechanic, maintenance mechanic, roughneck, carpenter's helper, and maintenance mechanic's helper (Tr. 41, 1092). The claimant alleges inability to work since January 22, 2004, due to heart attacks, a head injury, sleep apnea, high blood pressure, high cholesterol, congestive heart failure, three brain surgeries, and blocked arteries (Tr. 150).

## Procedural History

On April 27, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 21, 2009 (Tr. 16-26). The Appeals Council denied review, but this Court reversed the decision of the Commissioner in Case No. CIV-10-363-FHS-SPS and remanded to the ALJ with instructions to properly consider *all* the medical evidence in the record (Tr. 1136-1148). The ALJ conducted a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated December 7, 2012 (Tr. 1075-1094).

The Appeals Council denied review, so the ALJ's December 7, 2012 opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform a range of sedentary work, *i. e.*, he could lift/carry ten pounds frequently and occasionally, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. The ALJ imposed the additional limitations of not climbing ladders/ropes/scaffolds, avoiding exposure to unprotected heights and moving machinery, and avoiding exposure to fumes, dusts, gases, odors, and other respiratory irritants and extreme heat. He further imposed the psychologically-based limitations of performing unskilled work where supervision is simple, direct, and concrete, interpersonal contact with co-workers is incidental to the work performed, like assembly work, and he will have no dealings with the public (Tr. 1086). The ALJ concluded that although the claimant was unable to perform his past relevant work, he was nevertheless not disabled because there was other work he could perform in the national and regional economy, *i. e.*, touch up screener, surveillance system monitor, and cutter and paster (Tr. 1093).

**Review**

The claimant contends that the ALJ erred: (i) by failing to consider his nonsevere impairments in combination with his severe impairments at step four, and (ii) by failing to properly evaluate the medical evidence, specifically the opinion of treating physician

Dr. Patrick O'Neill and consultative examiner Dr. Everett E. Bayne. The undersigned Magistrate Judge finds both contentions persuasive for the reasons set forth below.

The medical evidence has been recounted at length in previous opinions. As relevant here, the claimant began experiencing seizure activity in December 2007. On January 9, 2008, Dr. Michael Tribbey, M.D., from The Medical Neurologists, Inc., wrote that on secondary review of an EEG, "there [are] some subtle changes in the left parietal and posterior temporal region of the brain, which suggest an area of previous damage and possible epileptic behavior" (Tr. 281). The claimant was prescribed seizure medication and told not to drive until he had been event-free for six months (Tr. 281). During 2008, the claimant reported missing two doses of seizure medication in April upon a visit to Dr. Tribbey, and having to visit the emergency room due to seizure activity an additional three times (Tr. 316, 571, 578, 594). The claimant was also treated in the ER for vertigo and headaches. In March 2008, state reviewing physician Dr. Kenneth Wainner completed a Physical RFC assessment, opining the claimant could perform light work, including unlimited pushing and pulling, but that he should avoid climbing ladders, ropes, scaffolds, and hazards (such as machinery and heights) (Tr. 307, 309).

The claimant was also treated by Dr. Patrick O'Neill beginning August 11, 2008. He diagnosed the claimant with coronary artery disease, epilepsy, congestive heart failure, and anxiety initially, and added asthma, chronic obstructive pulmonary disorder, and bipolar syndrome on October 3, 2008 upon further treatment (Tr. 363, 395). Dr. O'Neill completed a Physical Medical Source Statement, finding the claimant could

lift/carry less than ten pounds frequently, and only lift/carry ten pounds occasionally, that he could stand/walk less than one hour in an eight-hour workday due to severe swelling and lumbar pain and stand/walk continuously for ten to fifteen minutes at a time, and sit a total of one hour in an eight-hour workday (Tr. 389). He further indicated that the claimant would need to lie down during the workday to manage pain, to the extent that he would need to elevate his legs above his heart an hour for every hour worked (Tr. 389). Additionally, he imposed the postural limitations of never climbing, balancing, kneeling, crouching, or crawling, and only occasionally reaching, handling, fingering, and feeling (Tr. 390). Due to his asthma and epilepsy, Dr. O'Neill indicated the claimant would also have environmental restrictions. In support of this statement, Dr. O'Neill referred to abnormal EEGs, abnormal echocardiogram, and restless leg syndrome that does not allow him to sleep well and which triggers his seizures. Dr. O'Neill indicated that his statement applied from September 2004 through the date of the form, June 9, 2009 (Tr. 390).

As to his mental impairments, the claimant underwent a consultative examination with Dr. Everett Bayne on September 25, 2007. Dr. Bayne diagnosed the claimant with major depression, recurrent, secondary to chronic illness and assigned a global assessment of functioning (GAF) score of 50 (Tr. 243). He further opined the claimant was unemployable (Tr. 243). A state reviewing physician found that the claimant had moderate limitations in: (i) restriction of activities of daily living, (ii) difficulties in maintaining social functioning, and (iii) difficulties in maintaining concentration, persistence, or pace, but no episodes of decompensation of extended duration (Tr. 255).

The ALJ found that, prior to the date last insured, the claimant had the severe impairments of a seizure disorder, ischemic heart disease, asthma, and affective mood disorder, as well as the nonsevere impairments of sleep apnea; high frequency sensorineural hearing loss, left worse than right; hypertension; hyperlipidemia; vertigo; restless leg syndrome; shortness of breath; shaking in his hands; history of abdominal pain status post cholecystitis and H pylori; possible diverticulitis; and amphetamine abuse (Tr. 1077-1082). In his written opinion at step four, the ALJ summarized the claimant's testimony from his multiple hearings, as well as written statements by the claimant's wife and friend regarding the claimant's seizures (Tr. 1087). Turning to the opinions of Dr. Bayne and Dr. O'Neill, the ALJ assigned each of their opinions little weight. As to Dr. Bayne, the ALJ found his exam was "basically normal," that the claimant could handle his own funds, and that there was an inconsistency because the claimant could not recall any of three items after five minutes but that the claimant did provide an accurate history, and all these things were inconsistent with his statement that the claimant was unemployable (Tr. 1090). As to Dr. Bayne's assigned GAF score, the ALJ provided a background description of GAF scores and stated that he did not find the GAF score of 50 to be "dispositive" (Tr. 1091-1092). As to Dr. O'Neill, the ALJ found his opinion was not supported by the medical evidence or consistent with the record as a whole because (i) he applied his MSS from September 2004 but only began treating the claimant in 2008, and (ii) during office visits Dr. O'Neill reported no abnormalities or leg swelling and imposed no restrictions or limitations. Furthermore, the ALJ found that a one-hour

seating limitation meant the claimant could not have driven to the administrative hearing, sat through it, and then been able to return home, which made Dr. O'Neill's opinion less probative.

In his written opinion, the ALJ acknowledged that this case was before him on remand (Tr. 1075), but he nevertheless failed to follow the Court's instructions on remand, particularly as to the proper discussion of the claimant's GAF score of 50 (Tr. 1147-1148). The ALJ expounded at length on the use of GAF scores and concluded that they had limited probative value because they were not dispositive as to disability (Tr. 1091-1092). He did not, however, *analyze* the claimant's GAF scores of 50. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . does suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004), *citing Oslin*, 69 Fed. Appx. at 947. Instead of simply rejecting the claimant's sub-50 GAF scores as "not dispositive," the ALJ should have determined whether such low GAF scores were due to occupational factors. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) ("[T]he Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job [but] assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors."). *See also Simien v. Astrue*, 2007 WL 1847205 at *2 (10th Cir. June 28, 2007) ("The ALJ was tasked with determining the level of [claimant's] functioning within the

six domains, yet he made no mention of [claimant's] GAF ratings. We agree . . . that he could not simply ignore this evidence.").

The claimant also argues that the ALJ erred in failing to consider his nonsevere impairments at step four. Because the ALJ *did find* that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'")

[emphasis in original] [citations omitted].  But here the error *was not* harmless, because although the ALJ mentioned each impairment at step two the ALJ entirely failed to mention, much less consider the "cumulative effect of claimant's impairments," at step four.  *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).  *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two.  He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].  In fact, the ALJ largely devoted his time at step four to discrediting the claimant's two treating physicians, Dr. Bayne and Dr. O'Neill.

Because the ALJ failed to follow the Court's Order on remand and further failed to properly consider *all* the medical evidence in combination, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.  If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand

the case for further proceedings.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

    **DATED** this 10th day of September, 2014.

                                                              **STEVEN P. SHREDER**
                                                              **UNITED STATES MAGISTRATE JUDGE**